[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 21, 1996
Plaintiff Yaworski, Inc. appeals a decision of the commissioner of environmental protection denying its application to construct and operate a recycling facility and solid waste transfer station in the town of Canterbury. The commissioner acted pursuant to General Statutes § 22a-208a. The plaintiff appeals pursuant to § 4-183. The court finds in favor of the defendant commissioner and department of environmental protection.
The court heard oral argument on the plaintiffs appeal on February 1, 1996. Thereafter, on February 16, 1996, the plaintiff and the town of Canterbury filed a motion requesting permission to file a supplemental brief. On February 22, 1996, the defendant department of environmental protection filed a motion requesting permission to file a brief in reply to the plaintiffs supplemental brief. On March 8, 1996, the plaintiff wrote the court urging it to consider a decision of the department relating to an application for a permit from the Connecticut Resources CT Page 4802 Recovery Authority. The plaintiff argued that the department's decision in that case, a copy of which it appended to its letter, supported reversal of the commissioner's decision in this case. The defendants objected to the court's consideration of the plaintiffs letter. That objection is overruled. The court granted the parties' motions on March 13, 1996. The court has considered the parties' supplemental briefs and the plaintiff's March 8, 1996 letter, in addition to the briefs filed prior to oral argument, in arriving at its decision in the case. See Frank v.Streeter, 192 Conn. 601, 604-05 (1984).
The facts essential to the court's decision are undisputed and fully reflected in the record. On July 8, 1991, in accordance with General Statutes § 22a-208a and Regs., Conn. State Agencies §§ 22a-209-4 and 22a-209-9, the plaintiff submitted to the department of environmental protection, bureau of waste management, waste engineering and enforcement division (DEP-WEED) an application for a permit to construct and operate a recycling facility and municipal solid waste transfer station adjacent to the existing regional landfill operated by the plaintiff on its property on Packer Road in the town of Canterbury.
As proposed in the application, the new transfer station would consist of an enclosed pre-engineered metal structure with a concrete slab tipping floor, a fluid containment system, and a loadout bay for receiving and transferring waste received from commercial waste-hauling vehicles. The facility would replace the Yaworski landfill in serving the solid waste management needs of the region. Solid waste would be brought to the transfer station by commercial trucks and smaller private vehicles from Canterbury and other towns in the region for processing and transport to a licensed recycling and/or disposal facility.
The property on which the plaintiff proposed to construct the transfer station is designated in the Canterbury zoning regulations as commercial-industrial. On July 11, 1991, the Canterbury Planning and Zoning Commission approved the plaintiffs site plan for the construction of the transfer station on that property.
In accordance with discussions with the DEP-WEED, the plaintiff separated the July 1991 application into two different applications and, on August 5, 1992, submitted to the DEP-WEED a stand alone application for a permit to construct and operate a municipal solid waste transfer station. The waste planning and CT Page 4803 standards division reviewed the application and, on July 28, 1993, determined that it was consistent with the State Solid Waste Management Plan (February 1991). The application was also reviewed by the bureau of water management, permitting, enforcement and remediation division, which determined on May 15, 1993, that the plaintiffs Storm-water Discharge Registration and Pollution Prevention Plan were complete.
Having found the application complete, the DEP-WEED recommended that a Permit to Construct, which included 26 specific terms and conditions, be issued to Yaworski.
In accordance with General Statutes § 22a-208a(e), upon receipt of a petition from twenty-five persons, the department held a public hearing on the application. The hearing took place on October 21, November 19, November 23 and November 30, 1993. In addition to the plaintiff, the Hearing Officer admitted the Town of Canterbury as an intervening party. On October 21, 1993, the Hearing Officer admitted eleven individuals as intervening parties pursuant to General Statutes § 22a-19, finding that these eleven individuals (resident intervenors), who reside in the area of the plaintiffs proposed transfer station, had presented verified petitions asserting that the proposed transfer station would unreasonably pollute the environment.
At the hearing, the plaintiff and the department presented evidence and argument generally in favor of issuance of the proposed permit. The resident intervenors presented evidence in opposition. This consisted of testimony and documentary evidence concerning the adverse impact of the existing Yaworski landfill on the Packer Road neighborhood and the problems they expected both from increased Yaworski activities and from the additional traffic which would be generated by those activities. Both DEP-WEED and the resident intervenors presented evidence concerning the plaintiffs history of compliance, or non-compliance, with state and federal environmental statutes and regulations.
Following the hearing, on September 13, 1994, the hearing officer rendered a proposed final decision recommending that the plaintiff's application be denied. The basis of the recommendation was the hearing officer's conclusion that the plaintiffs past history of noncompliance with environmental laws disqualified it under General Statutes § 22a-208 (h) (Rev. to 1993). CT Page 4804
On December 23, 1994, Commissioner of Environmental Protection Timothy R. E. Keeney rendered his final decision affirming the hearing officer's proposed decision and her recommendation that the plaintiff's application be denied. The plaintiff filed a motion for reconsideration in accordance with General Statutes § 4-181a. On February 3, 1995, Commissioner of Environmental Protection Sidney J. Holbrook, Commissioner Keeney's successor, rendered a decision on the motion for reconsideration. Commissioner Holbrook decided essentially that Commissioner Keeney's decision should be affirmed unmodified. The court considers the Keeney decision, therefore, to be the substance of the final decision that is the subject of the plaintiffs appeal.
In his decision, Commissioner Keeney sets forth three reasons in support of the denial of Yaworski's application for a permit. First, the commissioner agreed with the hearing officer that the plaintiff's record exhibited a history of failure to comply with state environmental laws and regulations in operating the landfill. The commissioner found that the noncompliance was "serious and continuous," beginning in 1987 and continuing to the present time, that is, 1994. The commissioner concluded that General Statutes § 22a-208a(h) (Rev. to 1994) authorized him to deny the application for the transfer station permit after considering the applicant's prior record of compliance with the law. In the alternative, the commissioner concluded that Public Act 94-205, Section 1, now codified as General Statutes §22a-6m, likewise authorized him to deny the application for past noncompliance with the law.
The second basis of the commissioner's decision to deny the application was his determination that "a residential neighborhood is an inappropriate location for a large regional solid waste transfer station."
The third basis of the commissioner's decision was that there was no evidence in the record that there is no prudent and feasible alternative to the proposed facility.
The plaintiff advances a variety of arguments in support of its appeal: (1) that General Statutes § 22a-208a(h) was repealed prior to the commissioner's decision and, therefore, could not be a legal basis for the decision; (2) that General Statutes § 22a-208a(h) is unconstitutionally vague and unenforceable; (3) that, if Public Act 94-205 applies in the CT Page 4805 case, the commissioner failed to make the preliminary findings required by the Act; (4) that the commissioner's finding that the site of the proposed transfer station was in a residential area was erroneous and unlawfully interfered with the local zoning authority; (5) that the commissioner's reliance on the provisions of General Statutes § 22a-208 was arbitrary and capricious; (6) that the hearing officer erroneously permitted the residential intervenors to raise non-environmental issues; and (7) that the commissioner erroneously held that evidence of no prudent and reasonable alternatives was required.
Based on the undisputed fact that the commissioner denied the plaintiffs application to obtain a permit to operate a solid waste facility, the court finds that the plaintiff is aggrieved by the decision within the meaning of General Statutes § 4-183.
The commissioner's findings and conclusions relating to the plaintiffs history of failing to comply with the state's environmental laws and regulations are dispositive of the plaintiffs appeal. As noted, the commissioner based his decision at the outset on the provisions of subsection (h) of General Statutes § 22a-208a (Rev. to 1993). That statute provided, in relevant part, as follows:
 (h) No permit for a solid waste facility shall be granted unless the commissioner has considered the compliance of the applicant . . . with all state and federal environmental laws. If the applicant . . . was convicted of a violation of any state or federal environmental law and the commissioner finds, after hearing, that there is good cause to deny such permit or transfer of such permit, the commissioner shall not issue or transfer such permit.
There would be little purpose in setting forth in detail the findings of the hearing officer and the commissioner concerning the plaintiffs violations of the state's environmental statutes and regulations. A summary will suffice. In 1987, the plaintiff violated the disposal limits of its permit. In 1988 and 1989, the plaintiff allowed conditions to exist that were conducive to the breeding of rats, and the rats indeed were present. In 1989, the plaintiff violated the provisions of its permit relating to the times when trucks could enter the landfill. In 1990 and 1991, department inspections disclosed numerous violations of regulations, including exposed waste, lack of final cover, eroded CT Page 4806 fill areas, storage of contaminated soil, and the lack of an entrance sign. In 1991 or 1992, the plaintiff operated a wood reduction facility without a permit. In 1993 or 1994, the department notified the plaintiff that it was in violation of the terms of its permit to operate a recycling facility in numerous ways, resulting in the signing of a Compliance Order. Although the plaintiff was never convicted of any criminal charges or otherwise formally adjudicated culpable of violating environmental laws, department officials observed the violations summarized above, notified the plaintiff and required it to rectify the conditions as an ongoing process throughout the period noted.
Section 22a-208a(a) provides that "the commissioner of environmental protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter."
Subsection (h), prior to its repeal, was one of a number of subsections that set forth criteria for the exercise of the commissioner's broad mandate under § 22a-208a.
In the final decision, the commissioner held that the statute required him to take into consideration an applicant's observed violations of the environmental laws and regulations, whether or not they resulted in some kind of formal adjudication. He also held that, in this case, the plaintiffs history of such violations justified rejection of its application for a permit. In this regard, the commissioner stated that the plaintiffs failure to comply with the law and regulations in operating the landfill "reflects a thoroughgoing disregard for legal requirements as well as for the welfare of the many individuals who live close to the Applicant's existing solid waste facilities. To allow the Applicant to operate yet another facility would subject those individuals to the risk of further adverse impacts should the Applicant continue to violate the law and would make a mockery of the Department's solid waste regulatory program."
It is undisputed that there is ample and substantial evidence in the record to support the findings of the hearing officer and the commissioner that the plaintiff continuously violated state CT Page 4807 environmental statutes and regulations as well as the conditions of its own landfill permit over a long period of time. In view of that evidence, the court must affirm the agency's findings of fact notwithstanding other evidence in the record to the contrary. General Statutes § 4-183 (j); Connecticut BuildingWrecking Co. v. Carothers, 218 Conn. 580, 601 (1991). The only question is whether the court should endorse the commissioner's interpretation of § 22a-208(h).
Certain basic principles of administrative law govern the court's approach to statutory interpretation in this case. "Judicial review of conclusions of law reached administratively is . . . limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991).
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v. Commission on Hospitalsand Health Care, 200 Conn. 489, 497 (1986). It is undisputed that the commissioner is responsible for enforcing the statutes and regulations in question. This court is required, therefore, to accord great deference to the interpretation of those statutes and regulations given by the commissioner. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner,supra, 226 Conn. 376.
As noted, the commissioner's interpretation of subsection (h) is that it gives him the discretion to deny an application for a new permit to conduct solid waste activities in a case where he finds that the applicant has a poor record of past compliance with environmental laws and regulations, even if the applicant has never been formally adjudicated as a violator. The court views this interpretation to be entirely reasonable. First, the CT Page 4808 statute by its plain language does not limit the commissioner's authority to deny an application only in those cases where the applicant has been convicted of a violation. The statute does require the commissioner to consider the compliance history of every applicant, however, whether or not there has been a conviction, before granting a permit. That provision would be superfluous unless it is interpreted as giving the commissioner discretion to take action on his findings. In a case such as this, where there is abundant evidence in the administrative record of the applicant's persistent disregard of the law over a significant period of time, the commissioner's interpretation of subsection (h) as allowing him to deny a new permit is plainly reasonable. The court must, therefore, defer to that interpretation.
The plaintiff attacks the commissioner's findings and conclusions on the issue of its past compliance on various grounds. First, the plaintiff's claim that the resident intervenors had no standing to present evidence on the issue may not be sustained. General Statutes § 22a-19(a), which provides these intervenors their entry to the proceedings, does indeed limit their standing to the pursuit of environmental issues only. However, the strictest reading of that statute, in this court's view, would permit such an intervenor to present evidence and argument showing that the applicant for a solid waste facility permit had damaged the environment in the recent past by failing to adhere to the conditions of a previously issued permit.
The plaintiff also argues that subsection (h) is constitutionally vague and, therefore, unenforceable. The court disagrees. There is simply nothing vague about the word "compliance." Everyone knows it means "conformity in fulfilling official requirements." Webster's Ninth New Collegiate Dictionary. What might make such a word difficult to understand would be vagueness in the statutes or regulations with which compliance is required. But the plaintiff in this case has not suggested that any of the environmental laws, regulations or conditions of its permit, with which it failed to comply, are themselves unconstitutionally vague. The argument may not be sustained.
The plaintiff also contends that the repeal of subsection (h) by Public Act 94-205, effective October 1, 1994, prohibited the commissioner from relying on the subsection as a basis for his CT Page 4809 decision. The court disagrees.
"Connecticut has a strong policy disfavoring retrospective laws affecting substantive rights of the parties." PatriotGeneral Insurance v. Normandie, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 463778, 14 CONN. L. RPTR. 311 (May 11, 1995) (Handy, J.), citing Gibson v. Fullin,172 Conn. 407, 412, 374 A.2d 1061 (1977). "General Statutes §1-1(u) provides the general rule as to the applicability of amended or repealed statutes." In Re Migdalia M., 6 Conn. App. 194,200, 504 A.2d 532 (1986). Section 1-1(u) specifically states: "The passage or repeal of an act shall not affect any action then pending." General Statutes § 1-1(u).
Subsection (h) of § 22a-208a, which was enacted prior to the filing of the plaintiffs application for the permit and remained in effect until after the hearing officer rendered the proposed final decision, clearly affects the parties' substantive rights. According to its express terms, the plaintiff's right to receive a permit is subject to the commissioner's favorable review of the plaintiff's prior record. In the absence of any provision making the repealer, Public Act 94-205, applicable to this case, which was pending on October 1, 1994, subsection (h) remained effective as to the plaintiffs application.
Even if Public Act 94-205 were construed to apply to the plaintiff's application, the court would affirm the commissioner's decision. As noted, section 1 of the Act is codified as General Statutes § 22a-6m. That statute provides, in relevant part, that the commissioner may deny an application for a permit to construct and operate a solid waste facility if he finds that the record "evidences a pattern or practice of noncompliance which demonstrates the applicant's unwillingness or inability to achieve and maintain compliance with the terms and conditions of the permit . . . for which application is being made . . ." Commissioner Keeney specifically held that if the 1994 Act applied rather than subsection (h), denial of the permit pursuant to the Act would be "appropriate." In view of this express determination, the plaintiff's contention that the commissioner failed to make the requisite findings under the Act may not be sustained.
Lastly, on the issue of past noncompliance with environmental laws, the plaintiff asserts that the commissioner's enforcement of that rule in this case is arbitrary and discriminatory in view CT Page 4810 of the commissioner's failure to take similar action in other cases. See plaintiffs brief in the form of its letter to the court dated March 8, 1996, and attachment. This argument must fail. As the defendant points out, the plaintiff is essentially arguing that it is a victim of selective enforcement of the laws. Such a claim requires, however, allegations and proof of "invidious discrimination based on impermissible considerations such as race, religion or the exercise of a constitutionally protected right." State v. Delossantos, 211 Conn. 258, 287-88
(1989), cited by the defendant commissioner. There are no such allegations or proof in this case, of course.
In summary, the court affirms the commissioner's determination that the plaintiff's prior history of failing to comply with the law, the regulations and the conditions of its existing permit was sufficient basis for denying its application for the permit that is the subject of this appeal. The court's conclusion in this regard makes it unnecessary to consider the plaintiffs remaining claims. Nevertheless, the court will address one of them briefly in the interests of completeness.
Regarding the plaintiff's claim that the commissioner's decision impermissibly interferes with the implementation of local zoning regulations, it suffices to say that the commissioner's authority to regulate solid waste facilities under chapter 446d of the general statutes is unaffected by the concurrent power of the local zoning officials under title 8.Beacon Falls v. Posick, 212 Conn. 570 (1989), cited by Commissioner Holbrook in the decision on reconsideration.
For all of the foregoing reasons, the commissioner's decision is affirmed and the plaintiff's appeal is dismissed.
MALONEY, J.